# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

LORA SPENCE, :

                Plaintiff,

-vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
                Defendant. :

Case No. 3:08-cv-313

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial

gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on January 8, 2004, alleging disability from October 1, 1999, due to fibromyalgia, Crohn's syndrome, and "numerous other conditions". (Tr. 61-63, 70). Plaintiff's application was denied initially and on reconsideration. (Tr. 42-47, 49-51). A hearing and a supplemental hearing, at which Plaintiff amended her onset date to September 1, 2003, were held before Administrative Law Judge Thomas McNichols, (Tr. 53; 393-434), who determined that Plaintiff is not disabled. (Tr. 11-27). The Appeals Council denied Plaintiff's request for review, (Tr. 6-10), and Judge McNichols' decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge McNichols found that Plaintiff met the insured status requirements of the Act through June 30, 2005. (Tr. 19, ¶ 2). Judge

3

McNichols also found that through her date last insured, Plaintiff had severe history of fibromyalgia, a diagnosis of carpal tunnel syndrome, arthritis, a bipolar disorder with depression, and a history of somatization disorder, but that she did not have an impairment or combination of impairments that met or equaled the Listings. *Id.*, ¶ 3; Tr. 21, ¶ 4. Judge McNichols then found that prior to the expiration of her insured status, Plaintiff had the residual functional capacity to perform a limited range of light work. (Tr. 22, ¶ 5). He then used section 202.21 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony and concluded that prior to the expiration of her insured status, there was a significant number of jobs in the economy that Plaintiff was capable of performing. (Tr. 26, ¶ 10). Judge McNichols concluded that through her date last insured, Plaintiff was not disabled and therefore not entitled to benefits under the Act. (Tr. 27).

Dr. Gebhart has been Plaintiff's treating physician since December,1999. (Tr. 223-27; 240-80; 343-58). Dr. Gebhart reported on February 23, 2004, that Plaintiff has a history of fibromyalgia, reflux, supraventricular tachycardia, and asthma, that over the past five years, she "ha[d] gone downhill" and had numerous medical problems. *Id.* Dr. Gebhart reported further that Plaintiff also had hypothyroid, irritable bowel, reflux, fibromyalgia which had gotten severely worse, a history of mitral valve prolapse which occasionally caused supraventricular tachycardia, and that she was recently status post cholecystectomy. *Id.* Dr. Gebhart noted that Plaintiff's fibromyalgia had caused her severe pain and fatigue and made it difficult for her to attend work, that she used a cane at times, had a tender esophagus, tender points in twelve of the classic eighteen tender points of fibromyalgia, had extreme anxiety which caused agoraphobia and which caused flare-ups of her Crohn's disease, that a psychiatrist had not provided help for her, and that he (Dr. Gebhart) was prescribing psychiatric medications for her. *Id.*

4

Examining psychologist Dr. McIntosh reported on March 24, 2004, that Plaintiff graduated from high school, was slightly overweight, maintained an appropriate affect, had a mildly depressed mood, and that she was currently taking antidepressants. (Tr. 202-06). Dr. McIntosh also reported that Plaintiff displayed no outward signs of anxiety, was oriented, had no lapses of alertness or periods of mental confusion, appeared to be functioning in the average to high average range of intelligence, and that her flow of conversation and thought processes were normal. *Id.* Dr. McIntosh noted that Plaintiff was neither preoccupied nor obsessed, had a modest degree of insight into her functioning, did not seem to have impaired judgment, that she worked six hours a day twice a week in a library, and that she had some mild obsessive/compulsive symptoms. *Id.* Dr. McIntosh identified Plaintiff's diagnoses as somatization disorder and pain disorder associated with psychological factors and general medical condition and he assigned her a GAF of 53. *Id.* Dr. McIntosh opined that Plaintiff's ability to understand, remember, and carry out one or two step job instructions was mildly to moderately impaired by her memory lapses and difficulties in concentration, her ability to interact with others was mildly impaired, and her ability to withstand the stress and pressure of day-to-day work activity was moderately to severely impaired. *Id.*

On October 28, 2004, Dr. Gebhart reported that Plaintiff had numerous medical problems including type II bipolar disorder, uncontrolled obsessive-compulsive disorder, anxiety, self-abusive behavior, insomnia, Crohn's disease, hypothyroidism, and chronic back pain. (Tr. 224-25). Dr. Gebhart also reported that Plaintiff's bipolar disorder with mania was her greatest problem, that she had cut herself with knives due to her severe mental disorder, that she was pleasant, alert, and oriented, and that she was on a plethora of medications. *Id.* Dr. Gebhart reported that Plaintiff also had fibromyalgia, that because of her mental capacity she was unable to work, that her mental

5

disorder had not been controlled with medication, she had seen psychiatrists in the past "without much luck", that he (Dr. Gebhart) had taken over her medication because he "lecture[d] on bipolar and [knew] a lot about bipolar even as a family physician", and that because of her OCD, fibromyalgia, and other conditions, and chronic diarrhea, Plaintiff would make a poor candidate for any type of work outside the home and he did not recommend that she work outside the home. *Id.*

Plaintiff sought mental health treatment at DayMont Behavioral Center and at the time of her initial evaluation on October 21, 2004, psychologist Dr. Mills reported that Plaintiff was self-referred, cordial, cooperative, appeared mildly to moderately anxious, had fairly flat facial expressions, oriented, and that she had normal judgment and thought processes. (Tr. 293-313). Dr. Mills also reported that Plaintiff's estimated IQ range was average to bright normal, that she had engaged in self-cutting six to seven years ago, that she last used marijuana three weeks ago and used four times a month, and that her diagnoses were bipolar disorder NOS, mood disorder due to multiple health factors with depressive features, and she assigned Plaintiff a GAF of 60. *Id.*

On December 2, 2004, a psychiatrist at DayMont evaluated Plaintiff and essentially reported that Plaintiff's speech and thought processes were normal, and that her diagnoses were mood disorder due to multiple medical condition, bipolar disorder NOS, obsessive compulsive disorder, and borderline personality disorder. *Id.* The psychiatrist assigned Plaintiff a GAF of 50. *Id.*

Plaintiff consulted with orthopedist Dr. Marcotte on December 29, 2004, due to complaints related to her left shoulder. (Tr. 231-32). Dr. Marcotte reported that Plaintiff was tender in the trapezius muscle, that the tenderness was worse with lateral deviation of her head to the left, there was no point tenderness, and that she had a full range of motion. *Id.* Dr. Marcotte also

reported that Plaintiff had no tenderness of the AC joint, no signs of instability or rotator cuff tear, her sensation was intact, and that she had a positive Tinel's bilaterally. *Id.* Dr. Marcotte opined that much of Plaintiff's shoulder and neck pain and sciatica were related to her fibromyalgia, and he recommended physical therapy. *Id.*

Plaintiff continued to receive treatment from Dr. Gebhart during the period May, to January, 2006. (Tr. 240-66). Dr. Gebhart treated Plaintiff for her complaints of increased Crohn's symptoms, prescribed Vicodin and Valium, and performed trigger point injections. *Id.* In December, 2005, Dr. Gebhart diagnosed Plaintiff with narcolepsy and treated her with medication. *Id.*

Plaintiff was hospitalized June 14-20, 2006, for complaints of depression, suicidal ideation, and homicidal ideation. (Tr. 318-21). At the time of her admission, it was noted that Plaintiff was depressed, felt abandoned, was cooperative, had intact insight and judgment, and no delusions or hallucinations. *Id.* Plaintiff was treated with counseling and medications and was discharged with the diagnosis of major depressive affective disorder, recurrent episode, severe, without psychotic symptoms. *Id.*

Plaintiff consulted with Dr. Henderson on August 18, 2006, who reported that Plaintiff had tender points in the lateral epicondyles, posterior paraspinous cervical muscles, trapezius, medial scapular borders, sacral notches, trochanteric bursae, and anserine bursa bilaterally, some tenderness of the metatarsophalangeal joints and metacarpophalangeal joints, and a normal neurological examination. (Tr. 322-23). Dr. Henderson identified Plaintiff's diagnoses as inflammatory polyarthritis consistent with undifferentiated connective tissue disease and fibromyalgia syndrome. *Id.*

7

Examining psychologist Dr. Jones reported on November 28, 2006, that Plaintiff had highly animated facial expressions, normal body movements although there was some mild rocking periodically, that her speech was normal, her conversation was relevant and coherent, and that her stream of thought proved disjointed and thought association proved primarily circumstantial. (Tr. 326-35). Dr. Jones also reported that Plaintiff's presenting demeanor was defeated, resigned, apathetic, and dysphoric, her affect was sad, she acknowledged experiencing suicidal ideation, was restless, and that she presented as preoccupied with her own symptomatology and perhaps even somewhat delusional about her symptoms. *Id.* Dr. Jones noted that Plaintiff was alert to distracted with regard to her degree of consciousness, oriented, had fair to inconsistent contact with reality, and that she had sufficient judgment and common sense reasoning ability to live independently and make important decisions. *Id.* Dr. Jones also noted that Plaintiff's verbal IQ was 106, her performance IQ was 97, and her full scale IQ was 102, that she was functioning in the average range of intelligence, her memories fell in the low average to average ranges, and that her diagnoses were somatization disorder, major depression, recurrent, and posttraumatic stress disorder and Dr. Jones assigned her a GAF of 50. *Id.* Dr. Jones opined that Plaintiff's ability to relate to others was markedly impaired, her ability to understand, remember, and follow instructions was markedly impaired, her ability to maintain attention and concentration was mildly to moderately impaired, and that her ability to withstand the stress and pressures associated with day-to-day work activity was markedly impaired. *Id.*

An October, 2006, sleep study revealed that Plaintiff had restless leg syndrome, (Tr. 336), and an April, 2007, study revealed pathological daytime sleepiness suggestive of idiopathic hypersomnia. (Tr. 359).

8

On November 14, 2006, x-ray of Plaintiff's lumbar spine revealed degenerative disc disease and osteoarthritis of the lumbar spine. (Tr. 342).

A February 27, 2007, EMG revealed that Plaintiff had mild to moderate right carpal tunnel syndrome and moderate left carpal tunnel syndrome. (Tr. 339-40).

A medical advisor (MA) testified at the hearing that the record raised a question of whether Plaintiff was experiencing a medication-induced mood disorder and whether Plaintiff had a prescribed medication dependence. (Tr. 417- 26). The MA testified further that Plaintiff did not satisfy the Listings. *Id.*

In her Statement of Errors, Plaintiff essentially alleges that the Commissioner erred by rejecting Dr. Gebhart's opinion, by failing to find that her alleged sleep disorder is a severe impairment, failing to find that her subjective complaints and allegations were entirely credible, and by relying on the VE's testimony that was in response to an improper hypothetical question. (Doc. 5).

A key question in this case is the severity of any of Plaintiff's impairments before the expiration of her insured status. A social security disability claimant bears the ultimate burden of proof on the issue of disability. *Richardson v. Heckler,* 750 F.2d 506, 509 (6th Cir. 1984) (citation omitted). The claimant's specific burden is to prove that he was disabled on or before the last date on which he met the special earnings requirement of the Act. *Id.* (citation omitted); *Moon v. Sullivan,* 923 F.2d 1175, 1182 (6th Cir. 1990). Post insured status evidence of a claimant's condition is generally not relevant. *Bagby v. Harris,* 650 F.2d 836 (6th Cir. 1981); *see also, Bogle v. Secretary of Health and Human Services,* 998 F.2d 342 (6th Cir. 1993). However, such evidence will be considered if it establishes that an impairment existed continuously and in the same degree

9

from the date the insured status expired. *Johnson v. Secretary of Health and Human Services,* 679 F.2d 605 (6th Cir. 1982). Plaintiff's insured status expired on June 30, 2005. Therefore, Plaintiff must establish that she became disabled on or before that date.

In support of her first Error, Plaintiff argues that the Commissioner erred by failing to give controlling weight to Dr. Gebhart's opinion and failing to give good reasons for rejecting that opinion.

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)). In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

While it is true that a treating physician's opinion is to be given greater weight than

10

that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters, supra.*

In rejecting Dr. Gebhart's opinion, Judge McNichols essentially determined that the opinion was not supported by Dr. Gebhart's clinical findings, that his opinion as to Plaintiff's mental impairment was outside his area of expertise, and that it was inconsistent with other evidence of record. (Tr. 23-25).

Although Dr. Gebhart opined that Plaintiff is disabled, he provided few, if any objective findings to support that opinion. In addition, Dr. Gebhart's clinical notes contain few objective clinical findings and are primarily recitations of Plaintiff's subjective complaints. Further, many of Dr. Gebhart's clinical notes reflect that he frequently treated Plaintiff for conditions other than those which he identified as allegedly disabling her. *See, e.g.,* Tr. 241; 243; 244; 245; 247. Similarly, Dr. Gebhart's opinion is inconsistent with the findings reported by Dr. Marcotte as well as with the reviewing physicians' opinions. (Tr. 228; 42; 43).

With respect to his opinion that Plaintiff is disabled by her alleged mental impairment, Dr. Gebhart is indeed a family physician and the Commissioner did not err by rejecting

11

his opinion that Plaintiff's alleged mental impairments are disabling. Additionally, Dr. Gebhart's opinions as to Plaintiff's mental impairment is inconsistent with other evidence of record. For example, Dr. Mills, who evaluated Plaintiff when she sought treatment at DayMont, determined that Plaintiff was, at worst, mildly to moderately anxious, was oriented, and had normal judgment and thought processes and Dr. Mills assigned Plaintiff a GAF of 60 reflecting, at worst, moderate difficulties. In addition, Dr. McIntosh determined that Plaintiff displayed no outward signs of anxiety, was oriented, had no lapses of alertness or periods of confusion, and that there conversation and thought processes were normal. Finally, Dr. Gebhart's opinion is inconsistent with the MA's and the reviewing psychologist's opinions. (Tr. 207-22).

Under these facts, the Commissioner had an adequate basis for rejecting Dr. Gebhart's opinion that Plaintiff is disabled.

Plaintiff argues next that the Commissioner erred by failing to find that her sleep disorder is a severe impairment.

An impairment can be considered as not severe only if the impairment is a "slight abnormality" which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience. *Farris v. Secretary of Health and Human Services,* 773 F.2d 85, 90 (6th Cir. 1985)(citation omitted); *see also, Bowen v. Yuckert,* 482 U.S. 137 (1987).

An ALJ does not commit reversible error in finding a non-severe impairment where the ALJ determines that a claimant has at least one other severe impairment and then goes on with the remaining steps in the disability evaluation, since the ALJ considers all impairments, including non-severe impairments, in determining residual functional capacity to perform work activities. *See,*

*Maziarz v. Secretary of Health and Human Services,* 837 F.2d 240, 244 (6th Cir. 1987).

As noted above, Judge McNichols found at step two of the sequential evaluation process that prior to her date last insured, Plaintiff had severe history of fibromyalgia, a diagnosis of carpal tunnel syndrome, arthritis, a bipolar disorder, and a history of a somatization disorder. Judge McNichols then continued through the evaluation process and determined that in spite of her severe impairments, prior to the date she was last insured, there was a significant number of jobs in the economy that Plaintiff was capable of performing. Because he continued through the process past step two, Judge McNichols did not commit reversible error by failing to find that Plaintiff's alleged sleep disorder is a severe impairment.

Plaintiff's next challenge of the Commissioner's decision is that the Commissioner erred by failing to find that her allegations and subjective complaints were entirely credible. Plaintiff's argument essentially is that the Commissioner erred by failing to find that she is disabled by her fibromyalgia and resulting symptoms.

It is, of course, for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247 (6th Cir. 2007)(citations omitted). An administrative law judge's credibility findings are entitled to considerable deference and should not be lightly discarded. *See, Villarreal v. Secretary of Health and Human Services,* 818 F.2d 461 (6th Cir. 1987); *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230 (6th Cir. 1993). Determination of credibility related to subjective complaints rests with the ALJ and the ALJ's opportunity to observe the demeanor of the claimant is invaluable and should not be discarded lightly. *Gaffney v. Bowen,* 825 F.2d 98 (6th Cir. 1987).

The Sixth Circuit has recognized that fibromyalgia can be a severe impairment

and that, unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 243, (6th Cir. 2007), citing *Preston v. Secretary of Health & Human Services,* 854 F.2d 815, 820 (6th Cir. 1988)(per curiam). Fibromyalgia patients manifest normal muscle strength and neurological reactions and have a full range of motion. *Rogers, supra.* The process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials. *Id.* (citation omitted).

In rejecting Plaintiff's allegations of disabling symptoms, Judge McNichols determined that those complaints were not supported by the objective evidence and other evidence in the record. (Tr. 25).

As noted above, the record contains few objective clinical findings which indicate a disabling impairment. In addition, the record reveals that Plaintiff engages in a variety of activities that are not consistent with her allegations of total disability. For example, Plaintiff performed a variety of household tasks, worked part-time, ran errands, paid bills, shopped, apparently socialized with others,[1] got together with her sisters for activities, drove, listened to operatic music, occasionally did crafts and scrapbooking, made auditory recordings of her book ideas, listened to books on tape, read books, and did some yoga exercises. (Tr. 114-15, 205).

Under these circumstances, the Commissioner had an adequate basis for rejecting Plaintiff's subjective complaints and allegations of disabling symptoms primarily associated with her alleged fibromyalgia.

Plaintiff argues in support of her final Error that the Commissioner erred by relying

---

[1] Although Plaintiff denied visiting with others, the record indicates that Plaintiff was involved in an incident which resulted in criminal charges and which occurred at another individual's home. (Tr. 415-16).

on the VE's testimony because it was in response to an improper hypothetical question because that question did not reflect all of her limitations.

A hypothetical question must accurately portray the claimant's physical and mental impairments. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). If a hypothetical question has support in the record, it need not reflect the claimant's unsubstantiated complaints. *Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990); *see also, Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118 (6th Cir. 1994). A hypothetical question need only include those limitations accepted as credible by the ALJ. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1235 (6th Cir. 1993). A vocational expert's response to a hypothetical question that accurately portrays an individual's impairments constitutes substantial evidence for determining whether a disability exists. *Varley*, 820 F.2d at 779-80.

To the extent that Plaintiff's argument is that the hypothetical question Judge McNichols presented to the VE was infirm because it did not include the limitations described by Dr. Gebhart, for the same reasons that the Commissioner had an adequate basis for rejecting Dr. Gebhart's opinion, the Commissioner had an adequate basis for not including those limitations in the hypothetical question to the VE.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v.*

*Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

May 18, 2009.

*s/ Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).